SOPHIA KENNERSON, ADMINISTRATRIX, *vs.* THE THAMES TOWBOAT COMPANY.

MARCIA S. MARSDALE, ADMINISTRATRIX, *vs.* THE THAMES TOWBOAT COMPANY.

(THE THAMES TOWBOAT COMPANY'S APPEAL FROM COMPENSATION COMMISSIONER.)

Second Judicial District, Norwich, April Term, 1915.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GREENE, Js.

Upon an appeal from the finding and award of a compensation commissioner, the Superior Court cannot retry the facts, but it may inquire into them so far as may be necessary to determine whether the commissioner's action was illegal, irregular or informal, whether it was based upon a misconception of his powers and duties, or is so unreasonable as to justify judicial interference.

A claim to recover compensation for a personal injury, under the so-called Workmen's Compensation Act (Public Acts of 1913, chapter 138), rests fundamentally upon the basis of an agreement between the employer and the employee, by virtue of which the provisions of the Act, unless expressly rejected by the parties, are accepted by them as defining their respective rights and obligations.

Although the Act does not expressly declare that the contract thus created shall operate beyond the limits of this State, yet an intent that it shall have an extraterritorial effect, is but a reasonable inference from the language of the Act when read, as it should be, in the light of its purpose, subject-matter and history. Thus construed, the Act applies as well to claims for injuries received outside the State as it does to those for injuries received within it.

An acceptance of this Act by employer and employee, either expressly or impliedly, renders its provisions part of the employment contract.

It is the duty of a court to reconcile, if possible, contradictory provisions in an Act—especially in one inaugurating a new system—so as to sustain the legislation and effectuate its purpose.

A contract of employment entered into in this State between its citizens, for services to be rendered upon towboats operating at times upon the high seas and at times in the navigable waters of this and of other States, although a maritime contract, is not within the exclusive cognizance of a court of admiralty, but may be enforced by our State courts, the action or proceeding for such enforcement being a personal one and not one *in rem.*

The grant of judicial power to the United States in all cases of admiralty does not deprive the suitor of his common-law remedies in the State courts; and such remedies embrace all methods of enforcing rights and redressing injuries known both to the common and to the statute law.

The Employers Liabilitv Act of Congress does not apply to injuries received · in interstate commerce by water, nor to those occurring without fault of the employer; and therefore the State law may have its full effect in such instances.

In the present cases the compensation commissioner found the facts with respect to the support which each claimant had received from the respective decedents, and ruled that one claimant was partially, and the other was wholly, dependent.   *Held* that there was no apparent error in this conclusion or ruling in either case.

Argued April 28th—decided June 10th, 1915.

APPEALS by the defendant from awards of the Compensation Commissioner of the second district in favor of the plaintiffs, taken to and reserved by the Superior Court in New London County, *Bennett, J.,* upon the findings of the commissioner, for the advice of this court.  *Judgment advised dismissing the appeals.*

The decedents, Wallace J. Hodges and George Marsdale, were citizens of Connecticut.  The respondent, the Thames Towboat Company, was and is a Connecticut corporation located in New London, Connecticut. Contracts of employment entered into in New London existed between the respondent company and Hodges, decedent of Kennerson, administratrix, and Marsdale,

decedent of Marcia S. Marsdale, administratrix, under
which decedents' employment upon respondent's tow-
boats was to be in Connecticut and on waters of the
high seas, and of other States. Both decedents and
the respondent had accepted the provisions of Part B
of the Workmen's Compensation Act. The decedents
were, on the 15th day of April, 1914, drowned in Raritan
Bay, near South Amboy, New Jersey, by the founder-
ing of the tug on which they were employed; their
deaths arising out of and in the course of their employ-
ment.

Said Wallace T. Hodges left surviving him two sisters
under eighteen, a married sister, and a mother, claimant
herein. He had given his mother for upward of ten
years half of his earnings, or $20 a month. His mother
used the sums so contributed for her own support and
that of her minor children. She also received other
support from her husband, who earned $50 a month.
None of the other children contributed to their mother's
support.

Said George Marsdale left surviving him two brothers,
a sister, and a mother, claimant herein. He had during
the illness of his father sent his mother from July until
his father's death, November 10th, 1913, $10 a week
of his weekly wages of $15. After her husband's death
the mother went to live with her son Charles tempo-
rarily, and on December 9th, 1913, the decedent engaged
in said employment with the respondent for $30 a
month and his board, worth $.50 a day. Out of his
earnings the decedent gave his mother from $20 to $25
a month, which sums were to pay the funeral expenses
of her husband. These were just paid prior to George's
death. The mother and decedent had arranged that,
as soon as the funeral expenses were paid, her residence
with her son Charles should cease, and they should then
live together, and the decedent should support his

mother. Except as stated, none of the children contributed to the support of their mother.

From the foregoing facts the commissioner found that Mrs. Kennerson, the mother of Wallace T. Hodges, was a partial dependent of her son Wallace, and that Mrs. Marsdale, the mother of George Marsdale, was a total dependent of her son George.

*Hadlai A. Hull* and *Frank L. McGuire*, for the appellant (respondent).

*Christopher L. Avery*, for the appellees (claimants).

WHEELER, J. The reservation raises three questions for decision: (1) whether recovery under the Compensation Act may be had for the injury resulting in the death of these decedents; (2) whether the claimants, or either of them, were entitled to compensation under the Act; and (3) what judgment should be rendered by the Superior Court.

Before proceeding to the discussion, it is well to restate the position before the Superior Court of appeals from the finding and award of a compensation commissioner. The compensation commissioner is an executive officer engaged in administrative duties. The Superior Court cannot on appeal retry the facts. It inquires into the facts merely to determine whether "the finding and award . . . appealed from are unauthorized in law, irregular or informal, or based upon a misconception of the law, or of the powers or duty of the administrative tribunal, or are so unreasonable as to justify judicial interference." If it so find, it will set aside the award; otherwise it will dismiss the appeal. *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 149, 93 Atl. 245.

The accident resulting in the death of Hodges and Marsdale, for which compensation is claimed under our

Compensation Act, occurred in the waters of Raritan Bay; whether on the high seas or within the navigable waters of New Jersey, the record does not distinctly specify. The parties on the argument have agreed that it occurred in the navigable waters of New Jersey, and we shall so assume. The decedents and the respondent were citizens of Connecticut. The contracts of employment between them were made in Connecticut, to be performed partly within and partly without the State.

The parties to each contract had accepted the provisions of Part B of our Workmen's Compensation Act. As a consequence, the Act became a part of these contracts, part consideration of which was the promise of the employer to pay the compensation for injury provided by the Act, and the promise of the employee to accept such compensation in full for all rights and claims arising out of injuries sustained in the course of his employment.

The relation arising between these employers and employees was that of contract. Recovery was not dependent upon the fault of the employer, but upon the terms of the contract made. Acceptance of the Act, whether made expressly or impliedly, as permitted by the Act, made its provisions a part of these contracts of employment. The significance of the contract relation is foundational in the consideration of these cases, as, indeed, it must be in the consideration of many of the questions likely to arise under any compensation Act contractual in character.

Since the injury for which compensation is sought occurred in the navigable waters of New Jersey, the respondent insists that the admiralty court has exclusive jurisdiction. Maritime torts, contracts and claims are cognizable in admiralty. Torts depend on locality; contracts and claims, upon their character.

As to *in rem* actions, the jurisdiction of the admiralty court is exclusive. As to personal actions it is not.

In the Judiciary Act of 1789, now known as the Judicial Code of the United States (36 U. S. Stat. at Large, Chap. 231), the clause (§ 256), "saving to suitors, in all cases, the right of a common-law remedy; where the common law is competent to give it," was inserted in order to make clear that the grant of judicial power to the United States in all cases of admiralty did not deprive the suitor of his common-law remedies. The common-law remedies do not mean remedies in the common-law courts. They embrace all methods of enforcing rights and redressing injuries known to the common or statutory law.

Our State courts have from the beginning enforced remedies to redress torts and sustain rights arising under contracts, and their jurisdiction so to do has been from the earliest time an established judicial fact. *The Hine* v. *Trevor*, 71 U. S. (4 Wall.) 555, 567.

The jurisdiction of the State courts over torts occurring on that part of the sea not under the control of a State is admitted. *Martin* v. *Hunter*, 14 U. S. (1 Wheat.) 304, 337. And likewise, for a similar reason, the jurisdiction of the State courts over torts occurring in the navigable waters of the State is established. *The Hamilton*, 207 U. S. 398, 403, 28 Sup. Ct. Rep. 133. If this proceeding were one to secure a recovery for a tort, the place of the injury would determine the right of recovery. *Pendar* v. *American Machine Co.*, 35 R. I. 321, 87 Atl. 1. The attempt in this proceeding is to secure, through a procedure prescribed by statute, recovery of compensation for injury under a contract authorized by statute.

The contract in question may be assumed to be a maritime one. That would give the admiralty court the right to take jurisdiction over it. It could not take

from our courts jurisdiction over a contract made in Connecticut by citizens of Connecticut, nor prevent its enforcement wherever it is operative by the procedure of the statute of its origin. This contract is to be interpreted and enforced by the application of the same principles accorded any contract. A contract for work to be done, or services to be performed, or goods to be delivered, in a jurisdiction other than the place of contract is as enforceable in the State where the contract was made as in that where it was to be performed, unless the contract be against the law or the public policy of that jurisdiction, or its legal machinery is inappropriate or inadequate to its enforcement. Plainly this proceeding is a personal action, and not one *in rem.* The admiralty court has not exclusive jurisdiction. *Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638, 643, 648, 20 Sup. Ct. Rep. 824; *Schoonmaker* v. *Gilmore,* 102 U. S. 118; *Leon* v. *Galceran,* 78 U. S. (11 Wall.) 185; *The Belfast,* 74 U. S. (7 Wall.) 624; *The Hine* v. *Trevor,* 71 U. S. (4 Wall.) 555, 567, 568; *Manchester* v. *Massachusetts,* 139 U. S. 240, 262, 11 Sup. Ct. Rep. 559.

Again, it is insisted that an action for the injury in question is given in the admiralty court, and hence, under § 40 of the Compensation Act, it does not apply to this case. By this section the liability must have occurred in interstate or foreign commerce. There is nothing in the record to indicate whether the injury occurred while the employee was engaged in interstate or foreign commerce. If this be disregarded, it is still manifest this section has no application. The laws of the United States do not provide for compensation such as this contract gives, nor for a recovery for death or injury not predicated upon fault. Congress has not as yet legislated in regard to injuries occurring in interstate commerce by water; the State, therefore, may. *Stoll* v. *Pacific Coast S. S. Co.,* 205 Fed. Rep. 169.

Presumably § 40 and similar provisions in other Compensation Acts have reference to the Federal Employers Liability Act. Where the injury arises from a cause not covered by the Federal Act, this section does not apply. To come within the Federal Act there must be interstate traffic, interstate employment, and negligence. Though the first two conditions be present in this proceeding, the latter is not. Note to 6 Negligence & Compensation Cases Anno. p. 920. It is not claimed, nor do we see how it could be with success, that a State may not provide that contracts of employment entered into within its bounds may include compensation for injury arising out of and in the course of the employment in another jurisdiction.

We come then to the next question, whether our Compensation Act provides for compensation for injuries received outside our State and arising out of and in the course of the employment. The respondent insists that our Act has no extraterritorial effect. That is not the precise question to be determined, but, rather, whether our Act provides for compensation, arising out of a contract of employment authorized by our Act, for injuries suffered without our jurisdiction. If our Act authorizes such a contract, recovery may be had; otherwise not.

Unless the intention to have a statute operate beyond the limits of a State is clearly expressed or reasonably to be inferred from the language of the Act, or from its purpose, subject-matter, or history, the presumption is that the statute is intended to have no extraterritorial effect. A like presumption should control the operation of a contract based upon a statutory authority.

We find no clearly expressed intention in our Act that the contract authorized should operate without the State. If found in the Act, it must be found as an inference reasonably to be inferred from the language

of the Act, read in the light of its purpose, subject-matter, and history. In our search for such an intention it is all important that we do not forget the remedial character of the Act, and that we construe its provisions broadly and liberally "in order to effectuate its purpose." *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 146, 93 Atl. 245, 247.

The remedy provided by our Compensation Act is substitutionary in character, furnishing what was purposed to be a more humanitarian and economical system as a substitute for one deemed wasteful to industrial enterprises and commerce, and unfair to employees. Its intent was to afford its protection to all Connecticut employers and employees who might voluntarily choose to make its provision for compensation for injury a part of their contracts of employment. It assumed that accident is incident to employment, and purposed to charge its cost, in the case of every injury not caused by the wilful and serious misconduct or intoxication of the injured employee, to the industry in which it occurred. It intended that the employee should know what compensation he or his dependents would receive in the event of injury, and that payment should be made speedily by a procedure at once simple and inexpensive. It intended that the employer should know his liability in this regard, and so might include it among the items charged to operation. If our Act intends its contracts of employment to include compensation for injuries occurring only within our jurisdiction, it manifestly defeats its own ends. In that case the employer may not charge to the industry the compensation for injuries occurring without the State, and the employee or his dependents may not collect the same.

Neither employer nor employee can know what portion of this period of employment will be subject to

the provisions of the Act, and no provision for insurance of this liability will be practically possible, since it may not ordinarily be known what part of the service will be in and what part out of the State, or in what jurisdiction the service will be performed, in industries and commercial enterprises engaged in intrastate and interstate employment. The State boundary is not the limit of very many businesses. To subject them to the laws of the many jurisdictions in which they may be engaged will be especially burdensome to them, and involve them probably in greater expense and liability and far greater difficulties than under the old system.

Equally hard will it prove to the employee, since he must pursue his remedy in the State of the accident, or the Federal court applying that State's law, and thus he may be brought under any one of many different compensation Acts, with whose provisions he cannot hope to be familiar; some Acts contractual in character, some compulsory, some optional, and some *ex delicto;* and he may find he has forfeited the benefit of the foreign Act through failure to comply with its provisions. A reading of the several Acts now in force convinces us that these difficulties are not imaginative, but imminent actualities.

Is it reasonable to infer that our legislature, inaugurating a new system based upon humanitarian and economical considerations, should intentionally frustrate the object of the new system, and cast a multitude of employers and employees into a maelstrom of trouble, uncertainty, and liability? On the other hand, is it not reasonable to infer that the legislature, having bottomed the right to compensation upon contract, deemed unimportant the place of injury, since it must be presumed to have known that the contract, and not the place of injury, would govern the recovery. Such a construction of the Act would lift insuperable burdens from industry

and commerce and workmen, and give to each his course and the ascertained fruits of the contract of his will. Whether the contract shall include injuries in a jurisdiction other than where the contract was made is determined by the expressions or implications of each Act.

Section 1 of Part A of our Act recites: "In an action to recover damages for personal injury," certain defenses shall not be available. Here is no limitation to injuries received within the State. We, through comity, enforce actions for injuries received outside the State when not against our law or public policy. The natural construction of this language makes it include every action wherever it originates.

Section 1 of Part B recites that when employer and employee have accepted Part B, the employer shall not be liable to any action for damages for personal injury sustained by his employee in the course of his employment, but the employer shall pay compensation on account of such injury as provided by the Act. Do not the words "any action" mean what they say? And have we any more right to insert after them "within the State" than "within or without the State"? In this section the acceptance of the Act is by its express terms a renunciation and waiver of all rights and claims arising out of injuries sustained in the course of the employment, except as specified. It seems to us plain that the rights and claims waived are not merely those arising in Connecticut, but anywhere.

In § 8 of Part B compensation is required to be paid for "any injury" which incapacitates for more than two weeks. There is no warrant for construing any injury to consist of one arising within the State.

By § 20, every employer who has accepted Part B "shall keep a record of such injuries sustained by his employees in the course of their employment," and

"send each week to the commissioner such report of said injuries as the commission shall require." It cannot be that the record intended was solely of the injuries happening within the State. Obviously it was intended to embrace all injuries occurring to such employees everywhere; any other construction would do violence to the ordinary meaning of the word used and to the manifest purpose in keeping the record.

Similarly the notice of injury of § 21, and the voluntary agreement of § 22, relate to every injury, and not merely those occurring within the State.

Under § 29, any employer may enter into a substitute system of compensation with his employees in lieu of the compensation of the Act. The legislature had the undoubted power to make the substitute system apply to injuries without as well as those within the State.

Is it likely that the legislature intended a substitute system applicable to employees when employed within the State and inapplicable when employed elsewhere? How could the employer engaged in intrastate and interstate employment take advantage of the substitute system? If the agreement of this character had to be confined to the injuries received in the State, neither employer nor employee would enter into it. Practically the provision for a substitute system would be in part nugatory.

Certain sections of the Act are referred to as indicating that the Act has relation exclusively to intrastate injuries. Thus, § 7, which requires the employer to furnish medical and surgical aid, and § 23, which requires the injured employee to submit himself to examination by a reputable physician, are said necessarily to refer to Connecticut practitioners. We see no practical reason why these sections may not refer to the practitioner without the State as well as within it.

Unless this limitation be read in the section, the language used does not express the limitation.

Under § 17 each commissioner has jurisdiction of all claims and questions arising in his district; hence it is urged no commissioner has jurisdiction of the cases at bar.

We think the claims and questions relating to these cases may reasonably be said to arise in the place of domicil of the injured, if in the State, which in these cases is the place of the contracts, and the place from which the respondent hails.

Section 22 provides that the voluntary agreement, and § 26 that the awards of the commissioners, shall be filed in the office of the clerk of the Superior Court for the county "in which the injury occurred."

These provisions lend force to the respondent's claim. But provisions of this character should not be held to be mandatory, and thus permitted to defeat a primary purpose of the Act. If the voluntary agreement and the award be filed in the place of the agreement or contract, this will be as close a compliance with these provisions as the Act admits of in cases of injuries occurring without the State.

The provision, in § 27, that an appeal from the finding and award may be had "to the Superior Court for the county in which the injury was sustained," gives a stronger color to the respondent's claim than any other section of the Act.

In legislative Acts inaugurating a new system not infrequently are found contradictory provisions, and it becomes the duty of the court to reconcile them so far as it can. It does this, whenever it is possible, in such way as to sustain the Act and carry out its purposes. This we believe to be our present duty.

In a sense the injury may be said to have been sustained in the place of the contract, and if appeal is

taken, in cases of injury occurring without the State, to the county of the contract, the terms of the Act will be reasonably satisfied. The precise question we are considering has been the subject of discussion in two cases. One under the New Jersey Act, a contractual optional Act very similar to our own, where the trial court, in *Deeny* v. *Wright & Cobb Lighterage Co.*, 36 N. J. L. J. 121, construed the contract under the New Jersey Act as we construe these contracts. The other under the Massachusetts Act, where the Supreme Judicial Court construed their Act as confined to accidents within the State. *Gould's Case*, 215 Mass. 480, 102 N. E. 693.

We must accept the construction accorded the Massachusetts Act by its Supreme Judicial Court. It may be well, however, to point out that the court does not state that its Act is contractual in character. That, as we have indicated, is of final importance in the conclusion we reach concerning our own Act. Then, too, under the Massachusetts Act, the employee is merely the beneficiary under a contract between the employer and the insurer; with us the employer and employee enter into a contract relation.

In its reference to and comment upon certain sections of their Act, the court says that it must be found within the Act from "unequivocal language," or "plain and unmistakable words," that the Act was intended to relate to injuries without the Commonwealth. We have adopted a broader rule. We read our Act in the light of the purpose, subject-matter, and history of the Act, to determine whether it expressly or by reasonable inference intended to include in its contract injuries without our jurisdiction. This is our ordinary rule in the interpretation of statutes. The Massachusetts court states that "the subject of personal injuries received by a workman in the course of his employment is within

the control of the sovereign power where the injury occurs." And it argues that, if the Act had intended employers and employees from different States to carry their domiciliary personal-injury law with them into other jurisdictions, it would have expressed its intent in unambiguous words. This argument concerns a proceeding to enforce an *ex delicto* claim, not one for compensation by way of contract. It is also argued that, if an Act is given extraterritorial force, similar effect must be given to like laws of other States.

If contracts of employment cover compensation for injuries outside the State, recovery for these will be governed by the usual rules for the construction and enforcement of all contracts.

We should give similar effect to contracts of like character to those before us, though made under a compensation Act of another jurisdiction, provided they did not conflict with our law or public policy, and the machinery provided for the ascertainment and collection of the compensation could be used in our jurisdiction.

Where, as with us, the determination of the award is committed to a board or commission under a specified procedure, there will be serious obstacles to the enforcement of the contract in a foreign jurisdiction. 1 Bradbury's Workmen's Compensation (2d Ed.) p. 52. If it should be necessary to so rule, no hardship would result; the parties in interest would be relegated to the place where they had elected to make their contract and no questions of conflict of laws could arise. At the base of this question is the character of the compensation. Mr. Bradbury, repudiating his earlier view, stoutly maintains that, if the Act be contractual, the contracts arising will, unless a contrary intent appears, be found to cover injuries without as well as within the State. We think his later conclusion

sound, and one which will prove beneficial alike to employer and employee.

The questions of dependency are settled by the findings of the commissioner. Nothing appears to indicate that he committed an error of law in making these findings or in drawing his conclusions from them.

The Superior Court is advised to render its judgment dismissing these appeals.

In this opinion the other judges concurred.