## BALDWIN, STATE TREASURER v. BYRNE ET AL.

(No. 2105; February 7, 1939; 86 Pac. (2d) 1095)

For the appellant, the cause was submitted on the brief of *Ray E. Lee,* Attorney General; *Thos. F. Shea,* Deputy Attorney General; and *Wm. C. Snow,* Assistant Attorney General, of Cheyenne.

522

For the respondent, Lillian B. Byrne, the cause was submitted on the brief of *George F. Sawyer* and *John L. Sawyer* of Torrington.

RINER, Chief Justice.

The questions presented in this cause arise under the Workmen's Compensation Law of this State. The district court of Goshen County, Wyoming, made an award in favor of Lillian B. Byrne, hereinafter generally referred to as the "claimant," on account of the death of her husband, Ernest E. Byrne, a truck driver. The State Treasurer, as the official in charge of the Workmen's Compensation fund of the state, dissatisfied with the result reached by the trial court, has brought the cause here by the direct appeal method of procedure.

The material facts to be considered are very little in dispute and appear to be these: The claimant, Lillian B. Byrne, through due filing made for that purpose sought in the court above named compensation under the Workmen's Compensation Law of this State, for the death of her husband, Ernest E. Byrne, which occurred on October 31, 1936, about 9:30 o'clock P. M. Byrne, who was a resident of this State, living in Torrington, Wyoming, was employed by one L. F. Ashburn, likewise a resident of this commonwealth, at the time of the accident, as a driver of one of the two trucks owned and operated by Ashburn. The latter was engaged in a general trucking business in the State of Wyoming and also in transporting livestock across state lines to Denver, Colorado. About ninety per cent of the business in which these two trucks were employed was in moving livestock, of which about one-half was intrastate and the other one-half was interstate.

About noon on the 31st day of October, 1936, afore-

said, accompanied by his wife, the claimant above named, Byrne, left Torrington with a load of cattle consigned to the Denver stockyards. The truck arrived safely at the stockyards and the animals were unloaded. Byrne and his wife then took the truck and drove up the Brighton boulevard to Denver to procure gas and oil, as well as to obtain their evening meal. They had left the stockyards but a short time when some noise in the rear of the truck attracted Byrne's attention, and being under the impression that perhaps the loading chute for the truck had become loose, Byrne stopped the vehicle on the right-hand side of the road as far as possible off of the paved highway. He then got out of the driver's seat and went around to the rear of the truck to ascertain, if possible, the cause of the noise or trouble, if any. Shortly afterwards a car driven by a drunken Mexican, as alleged in the claimant's petition for an order requiring a report from the employer, Ashburn, one Baca, driving in the same direction as the truck, struck the left rear of the vehicle in Byrne's charge, crushing him between the two automobiles and causing his instantaneous death, his head having been caught between the colliding cars.

Baca was tried in the courts of Colorado, convicted on the charge of involuntary manslaughter, and a jail sentence imposed as required by the law of that jurisdiction.

The claimant made a report of the accident under the Workmen's Compensation Law rather informally in the petition above mentioned, and, also, as already intimated, filed her application for an award under said law. The employer, Ashburn, at the time of the accident held an appropriate license to operate his trucks under the Motor Vehicle Act of Wyoming, and also was authorized by the Interstate Commerce Commission to operate them in three states, two of these being Wyoming and Colorado.

Ashburn did not at first file any report of the accident as directed by the Workmen's Compensation Law, having theretofore been advised by representatives from the State Treasurer's office that inasmuch as he was operating the truck involved in the accident interstate at that time it would be unnecessary for him to report the accident, as it was not compensable under Wyoming state law. Subsequently, however, upon claimant's petition aforesaid having been filed and having the matter called to his attention by the clerk of the district court in and for Goshen County, Wyoming, he filed a report of the accident in that office, stating that his delay in so doing was solely because he had been advised, as mentioned above, by those in authority that it was not necessary for him to do this. He expressed his willingness to comply with any provisions of law and to abide by the decision of the court whether he should file a pay-roll statement with the State Treasurer, as the official in charge of the administration of the Workmen's Compensation Act fund.

Subsequently the matter was heard before the district judge, claimant appearing in person and by counsel and a similar appearance being made on behalf of the employer. The State Treasurer was represented by the Assistant Attorney General of the State of Wyoming. Evidence in the case was taken at this hearing, which occurred the 13th of May, 1938. On the 5th day of July, 1938, the district court of Goshen County made its award aforesaid, in favor of the claimant, in the sum of $2,000, payable in monthly installments, at the rate of $45 per month, subject to the provisions of Chapter 124, Section 120, Wyoming Revised Statutes, 1931, as subsequently amended.

The question to be determined is, briefly stated, whether the award was properly made inasmuch as the accident happened without the confines of this commonwealth, under the circumstances detailed above.

Several arguments are advanced on behalf of the State Treasurer why the award should not have been made.

It is contended on behalf of the State Treasurer that inasmuch as the accident happened and Byrne's death occurred without this State, as was the fact, and as was so found by the district court in its order of award, such order was erroneous because it was the intention of the Workmen's Compensation Act of this State that it be applied only to accidents and injuries which take place within the borders of Wyoming. Our attention is directed also to certain provisions of the Act itself which it is asserted indicate a legislative intention that no award shall be made under circumstances such as are presented in the record before us. The statutory provisions most urgently advanced as sustaining this view are: Section 124-112 W. R. S., 1931, which requires both the employer and employee to file a report of the accident and the apparent injury resulting therefrom and the employee to file also a claim for an award "in the office of the clerk of the district court of the county wherein such accident occurred"; Section 124-113 W. R. S., 1931, as amended by Section 3 of Chapter 100, Laws of Wyoming, 1933, which indicates the procedure to be followed by the district court officials, including the district judge, when such a claim has been made, this section of the law declaring in its first sentence: "Whenever an injury or death resulting from injury is reported to the clerk of the district court of the county wherein such injury occurred, in accordance with the preceding section, it shall be the duty of said clerk to at once notify the judge of said court, that such injury report has been filed in his office." While the language thus used certainly does afford some ground for the contention advanced, we are not inclined to think that it must be deemed decisive of the point.

In Kennerson v. Thames Towboat Co., 89 Conn. 367,

94 Atl. 372, L. R. A. 1916A, 436, discussing and rejecting a similar contention with respect to provisions appearing in the Workmen's Compensation Law of the State of Connecticut, the court said:

"Certain sections of the Act are referred to as indicating that the Act has relation exclusively to intrastate injuries. Thus, § 7, which requires the employer to furnish medical and surgical aid, and § 23, which requires the injured employee to submit himself to examination by a reputable physician, are said necessarily to refer to Connecticut practitioners. We see no practical reason why these sections may not refer to the practitioner without the State as well as within it. Unless this limitation be read in the section, the language used does not express the limitation.

"Under § 17 each commissioner has jurisdiction of all claims and questions arising in his district; hence it is urged no commissioner has jurisdiction of the cases at bar.

"We think the claims and questions relating to these cases may reasonably be said to arise in the place of domicile of the injured, if in the State, which in these cases is the place of the contracts, and the place from which the respondent hails.

"Section 22 provides that the voluntary agreement, and § 26 that the awards of the commissioners, shall be filed in the office of the clerk of the Superior Court for the county 'in which the injury occurred.'

"These provisions lend force to the respondent's claim. But provisions of this character should not be held to be mandatory, and thus permitted to defeat a primary purpose of the Act. If the voluntary agreement and the award be filed in the place of the agreement or contract, this will be as close a compliance with these provisions as the Act admits of in cases of injuries occurring without the State.

"The provision, in § 27, that an appeal from the finding and award may be had 'to the Superior Court for the county in which the injury was sustained,' gives a stronger color to the respondent's claim than any other section of the Act.

"In legislative Acts inaugurating a new system not

infrequently are found contradictory provisions, and it becomes the duty of the court to reconcile them so far as it can. It does this, whenever it is possible, in such way as to sustain the Act and carry out its purposes. This we believe to be our present duty.

"In a sense the injury may be said to have been sustained in the place of the contract, and if appeal is taken, in cases of injury occurring without the State, to the county of the contract, the terms of the Act will be reasonably satisfied."

It is true that the Connecticut law is designated in the opinion in that case as one elective in character, while the Wyoming law is compulsory and obligatory upon employers and employees affected by it, but logically, it is our view, that what was said by the court as last above quoted is quite as applicable to the phraseology appearing in the Wyoming statute dealing with the same subject as it was to the one then under consideration.

The case last cited has been very frequently referred to by the courts of sister states and its reasoning in large measure approved. The accident in question in that case, which resulted in the death of the workman, occurred in the navigable waters of New Jersey. The decedents, for whom compensation was claimed, and the employer were citizens of Connecticut. The contracts of employment between them were made in Connecticut to be performed partly within and partly without that state.

Where both the employer and employee were residents of the state of Washington and the employee was killed due to the automobile he was driving leaving the highway and overturning on account of fog being encountered during the trip and while he was engaged in driving the car in connection with his employer's business, the accident occurring on a highway in another state, it was held that such employee should recover compensation under the Workmen's Compen-

sation Act of Washington. The court in Hilding v. Department of Labor and Industries, 162 Wash. 168; 298 Pac. 321, said:

"The authorities generally hold that, unless the Workmen's Compensation Act expressly provides that it shall have no extra-territorial effect, it applies to workmen employed in a state to do work outside of the territorial limits of that state. to do work outside of the territorial limits of that state. Gooding v. Ott, 77 W. Va. 487, 87 S. E. 862, L. R. A. 1916D, 637, McGuire v. Phelan-Shirley Co., 111 Neb. 609, 197 N. W. 615; Anderson v. Miller Scrap Iron Co., 169 Wis. 106, 170 N. W. 275, 171 N. W. 935; Saunders' Case, 126 Me. 144, 136 A. 782. See, also, State of Minnesota ex rel. Chambers v. District Court of Hennepin County, 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347, and extensive note."

The concluding paragraph of the opinion is in this language:

"This court is committed to the doctrine that our Workmen's Compensation Act should be liberally construed in favor of its beneficiaries. It is a humane law and founded on sound public policy, and is the result of thoughtful, painstaking, and humane considerations, and its beneficent provisions should not be limited or curtailed by a narrow construction."

In State ex rel. Loney v. State Industrial Accident Board, 87 Mont. 191, 286 Pac. 408, the contract of employment was made in Montana and both employer and employee resided in that commonwealth, but the accident occurred in the course of the employee's employment, through his falling under a truck which ran over him, in Glacier National Park. In the opinion filed in the case, it was pointed out that:

"The weight of authority in this country sustain the assertion that a Workmen's Compensation Act will apply to injuries to workmen employed in the state and injured while temporarily out of its limits, unless there

is something in the act making it inapplicable or clearly denying the right of the employee to recover in such case. Grinnell v. Wilkinson, 39 R. I. 447, 98 A. 103, 106, L. R. A. 1917B, 767, Ann. Cas. 1918B, 618; Gooding v. Ott, supra (77 W. Va. 487, 87 S. E. 862, L. R. A. 1916D, 637); Kennerson v. Thames Towboat Co., 89 Conn. 367, 94 A. 372, L. R. A. 1916A, 436. * * * * * *

"The Montana act does not carry a necessary inference against extraterritorial operation in a proper case. Had the lawmakers intended thus to confine its operation, it would have been easy to have said so, but they did not. Pierce v. Bekins Van & Storage Co., 185 Iowa, 1346, 172 N. W. 191.

"Viewing the rationale of the act, and bearing in mind the liberal interpretation with which it should and must be construed (Dosen v. East C. Min. Co., 78 Mont. 579, 254 P. 880; Edwards v. Butte & Superior Min. Co., 83 Mont. 122, 270 P. 634), we are satisfied that they did not so intend. The law contemplates that the burden of caring for injured workmen and their dependents shall not fall upon the public in general but upon the industry."

And thereafter in the course of the opinion the court said:

"While section 2847 declares: 'This act is intended to apply to all inherently hazardous works and occupations within this state,' we do not see that this necessarily excludes its operation beyond the limits of the state where the employee, in the furtherance of his employer's business which is localized in Montana, and which he is following in passing over the state line, meets with an accidental injury. The contract between employer and employee here contemplated that the road would extend into the park. The employee might or might not work on that portion of the road. The employer's business was localized in this state. The employee was acting in the course of and within the scope of his employment, furthering his employer's business, when he performed work within the park and received his injury. He should be compensated precisely as if he were injured within the state but not within the limits of the park.

"The intent of the act is to afford protection to all Montana employers and employees who comply with its provisions, and, as the authorities heretofore cited show, if in this instance simply because the employee was hurt while within the limits of the park he cannot recover the beneficent purpose of the act would be defeated."

It is evident that the Montana law contained language far more emphatic than any appearing in the statutory provisions under consideration at bar indicating, as is claimed for appellant, an operation of the act within the state only. In that case the State Industrial Accident Board had declined to consider the claim for compensation and had dismissed the case solely upon the ground that an opinion had theretofore been given by the Attorney General of Montana to the effect that the Workmen's Compensation Act of the State had no application to employers and employees within the park. A peremptory writ of mandamus was asked to compel the Board to hear and dispose of the matter on its merits. What was said by the court in its opinion was in preface to directing an order granting the writ as sought.

It is perhaps impossible to reconcile intelligently the decided cases from the various state jurisdictions in the Union, except upon the theory that they are largely due to varying language in the statutory enactments involved. But so far as we have been able to examine them—and we have endeavored to be reasonably exhaustive—it would appear that the trend of modern authority favors the allowance of a proper claim for compensation under Workmen's Compensation Acts, even though the accident and injuries flowing therefrom took place without the jurisdiction of the forum where compensation is claimed but nevertheless in the regular course of an employment entered into within the state and between residents thereof. It is unnecessary to cite our former decisions indicating that the

construction applied here to the Workmen's Compensation Act of Wyoming has always been one of a liberal character with a view of accomplishing its beneficent purpose.

In addition to the above cited authorities, when we turn to the constitutional amendment (Article 10, Section 4 of the Wyoming Constitution), which directed the Legislature of this State to enact a law of this character, we find the pertinent portion thereof reads:

"As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee."

It will be observed that the only exception when compensation shall not be paid suggested by this language, is the case where injuries are due "solely to the culpable negligence" of the workman affected. No other limitation appears to be established by the language used.

It is significant, also, that Section 124-106-7 W. R. S., 1931, as it was amended in Chapter 100, Section 2 of Laws of Wyoming, 1935, declares that:

"(1) The words 'injuries sustained in·extra-hazardous employment,' as used in this chapter, shall include death resulting from injury, and injuries to employes, as a result of their employment and while at work in or about the premises occupied, used or controlled by the employer, and injuries occurring *elsewhere* while at work in places where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business."

This is followed by language disallowing compensation for injuries incurred by a workman on his way to assume or after leaving his employment and injuries

caused by the wilful act of a third person directed against the employee for personal reasons or because of his employment, and on account of a disease except as it may have directly resulted from an injury incurred in the employment. We have italicized the significant word in the quoted portion of the section last above referred to, *"elsewhere,"* as it sets no territorial limitations whatsoever. Indeed, it is not urged on behalf of appellant that there is in the Wyoming Act a definite or precise statement that the law shall have no extra territorial effect, and we have been able to find none. That being so, we are constrained to the view, as expressed by the courts above cited, that our law is and should be held to be applicable extra territorially to circumstances such as the instant cause presents.

We are also asked by appellant to consider Section 124-109 W. R. S., 1931, which reads:

"Where an employe coming under the provisions of this chapter receives an injury under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, and no legal liability attaches to the employer, then and in such case such employe shall be left to his remedy at law against such other person, and compensation shall not be payable under this chapter."

It is insisted that even if the Workmen's Compensation Act is applicable extra territorially as concerns the boundaries of this State, still under the express direction of the section last above quoted there can be no compensation awarded the claimant because her husband's death was caused by a third person upon whom alone the legal liability for damages rested. In this connection, in the order of award, the trial court found "that there was no competent and satisfactory evidence introduced at said hearing tending to prove that said injury was received under circumstances creating the

legal liability in some person other than the employer to pay damages in respect thereof." From our examination of the record we are not able to see that this finding is supported by the proof in this matter, and if there were no legal principles which could be invoked in aid of the order of award, we would be obliged to reverse it. We think there are. Though language in part somewhat resembling the provisions of Section 124-109, supra, can be found in the legislation of other states, there is nothing that we have been able to discover or which has been drawn to our attention in the statutory enactments in other jurisdictions when examined in their full legal import which is identical with the section last above quoted. The section, indeed, seems to be a provision which is unique in the legislation of this State.

We are obliged to say that if this section be taken as operative in its exact literal sense, then the Workmen's Compensation Act of this State as an entirety must be regarded as seriously affected and its primary purpose to supply an accident insurance system, as heretofore pointed out by this court over twenty years ago in Zancanelli v. Coal & Coke Co., 25 Wyo. 511, 173 Pac. 981, in substitution for common law obligations ordinarily existing between employer and employee, will be in large measure wrecked. In that case this court said:

"It is not intended to give compensation as damages, but is more in the nature of accident insurance. Accident insurance companies pay a certain fixed compensation per week on account of a certain fixed premium paid and a certain sum in accord with a fixed schedule for loss of leg, arm, etc., or upon accidental death, and there is no question of the amount in accordance with expectancy of life or prospective earning power. In adopting the new system both employees and employers gave up something that they each might gain something else and it was in the nature of a compromise, as

was said in Stertz v. Indus. Insur. Comm., 91 Wash. 588, 158 Pac. 256, 258:"

A quotation at length from the opinion of the Supreme Court of Washington in the Stertz case is thereafter given, the concluding portion being:

" 'Ours is not an Employers' Liability Act. It is not even an ordinary Compensation Act. It is an industrial insurance statute. * * * * All the features of an Insurance Act are present. Not only are all remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund fed by various employers. When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended.' "

In the Zancanelli case it was also said in response to contentions advanced by counsel:

"The questions coming under the other objection C. relative to the Fourteenth Amendment and the deprivation of life, liberty and property without due process of law, are those most seriously urged, not only in the Mountain Timber Company case and in this case, but in other cases attacking the constitutionality of Workmen's Compensation Acts, both as against the Federal Constitution and similar provisions of the Constitutions of the various states, and it is particularly urged that the requirement that employers shall be forced to contribute or pay for accidents that were not caused by their own negligence are against these constitutional provisions. Attorneys and courts, in urging this, seem to be unable to grasp the difference between mere doctrines or rules of law which are under legislative control and subject to legislative change and inherent and fundamental rights which are protected by constitutional provisions. The whole common law doctrine of compensation in damages for negligence with all its attendant rules and doctrines as to fellow-servants, assumption of risks and the like, are but rules of law

of growth through decisions of courts from time to time and not inherent or vested rights that cannot be changed or abolished by legislative enactment, unless prohibited by some constitutional provision."

In the much later case of Hotelling v. Fargo-Western Oil Co., 33 Wyo. 240, 238 Pac. 542, this court additionally remarked:

"The law does not contemplate that one engaged in extra-hazardous employment shall assume the risk of injury from the negligence of a fellow-workman. A workman is excluded from benefits when it appears that the injury was due solely to his own negligence. It is then only that his negligence is 'culpable' or 'blamable,' within the meaning of the exception. It follows that the case does not fall within the exception when the negligence of a fellow-workman has contributed to the injury."

These decisions made it clear ,we think, that the Workmen's Compensation Act of this State, so far as extra-hazardous employments therein listed are concerned, displaced the well-known fellow-servant doctrine, which excuses the employer after he has selected an employee with reasonable care and the latter, has, through negligence, inflicted an injury upon another employee of the master in the course of the work upon which they were both engaged. The negligent employee alone is under legal liability to respond in damages. Since the Zancanelli and Hotelling cases were decided awards have been made repeatedly through the years intervening between their disposition and the present time, giving to employees compensation though injured through a fellow-workman's negligence, and no one has ever questioned that the awards were not properly made. Yet, as already intimated, if the direction of Section 124-109 were heeded and that section deemed controlling, such awards could not legally have been made, for, as we have said, in the case of a servant injuring a fellow-workman and application being made

of the fellow-servant rule of the common law, the former is liable, and not the employer, unless the latter has not used due care in his selection of the one causing the injury.

"General trucking" is listed as one of the hazardous employments to which the Workmen's Compensation Act of Wyoming is applicable, Section 124-104 W. R. S., 1931, as amended by Laws of Wyoming, 1935, Chapter 100, Section 1. It is common knowledge that one of the greatest hazards to which that occupation is subjected is the negligence of third persons upon the highways over which the business of general trucking is operated, with whom the employer has no connection whatsoever. If, as we have seen, injuries are compensable in the case of fellow-servants' negligence, though no "legal liability attaches to an employer," we are unable to perceive why an award should not be payable in the case of a third person's negligence when that is one of the well-known hazards of the business within the reasonable scope of a named employment. The situation presenting a fellow-servant's negligence certainly comes within the purview of Section 124-109 literally quite as much so as the negligence of a third party.

Citing extremely elaborate lists of cases in support, 69 C. J. 694-697 states that:

"In pursuance of the general object of giving effect to the intention of the legislature, the courts are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, it being generally recognized that whatever is within the spirit of the statute is within the statute although it is not within the letter thereof, while that which is within the letter, although not within the spirit, is not within the statute. Effect will be given the real intention even though contrary to the letter of the law."

We are obliged to reach the conclusion that Section 124-109 must be deemed wholly irreconcilable with the general spirit and true intention of the Legislature as disclosed by the Workmen's Compensation Act when viewed in the light of the prior utterances of this court, and hence must be held to be without operative force under circumstances such as are now at bar.

Finally, it is argued for appellant that the accident and death involved occurred in interstate commerce, and according to the mandate of Section 124-105, W. R. S., 1931, is not compensable. That section, so far as pertinent here, declares, with reference to the Workmen's Compensation Act, that:

"This chapter shall not be construed to apply to business or employments, which, according to law are so engaged in interstate commerce as to be not subject to the legislative power of the state nor to persons injured while they are so engaged."

The portion of the excerpt made from the statute as above and particularly to be regarded in the matter before us is that reading, "employments * * * * *so engaged in interstate commerce as to be not subject to the legislative power of the state."

While the national Congress in 1935 adopted a "Motor Carrier Act" (49 U. S. C. A., Section 301 et seq.), it is expressly provided therein (49 U. S. C. A. Section 303 (b)) that:

"Nothing in this chapter, except the provisions of section 304 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * * (6) motor vehicles used in carrying property consisting of livestock, fish (including shell fish), or agricultural commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation."

We should note, also, that the first sentence of Section 315 in the compilation last above cited reads:

"No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the Commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, in such reasonable amount as the Commission may require, conditioned to pay, within the amount of such surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or permit, or for loss or damage to property of others."

While it is clear that the national Congress has legislated in regard to some phases of motor carrier transportation, our attention is not directed by counsel to any provisions of the Motor Carrier Act which specifically cover or even trench upon the field occupied by the Wyoming Workmen's Compensation Act.

In Hall v. Industrial Commission of Ohio, 131 Ohio St. 416, 3 N. E. (2d) 367, the court, referring to a well-known principle of constitutional law, declares that:

"It is plain that claimant is entitled to compensation unless he is barred of his right to share in the fund because he was engaged in interstate commerce outside this state at the time of his injury. The consensus of authority seems to be that a state may provide compensation to one engaged in interstate commerce so long as the Congress of the United States, acting under its constitutional power to regulate commerce among the states, has not pre-empted the field. (Citing many authorities.)

"It is urged that the collection of premiums is an unwarranted burden on the employer and in effect on interstate commerce, since the right to regulate com-

merce among the states is reposed in Congress by the Federal Constitution. The power of Congress in this respect is complete and plenary and a direct burden cannot be imposed thereon by a state; but it is clear that in case Congress has not acted, state power may be exercised within certain limitations. If the matter is such as to require a general system or uniformity of regulation, the power of Congress is exclusive. In situations which admit of diverse treatment due to peculiar local conditions, the state may act until such time as Congress legislates on the subject. Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 741, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18."

Subsequently in the same opinion it was very pertinently remarked, after quoting in extenso from the opinion of the Supreme Court of the United States in the Minnesota Rate Cases, cited in the excerpt above given, that:

"A careful examination of the whole opinion forces the conclusion that a direct burden is not imposed by providing compensation to those injured outside the state in interstate commerce and that such legislation is a matter of peculiar concern to this state. The provisions for compensation can hardly be said to be unreasonable or to transcend the bounds of proper local need and protection.

"The Industrial Commission, by assessing premiums for the portion of the work done by the employees engaged in interstate commerce while within the state, undertook to recognize the right of such employees to compensation while engaged in interstate commerce within the state, but proceeded upon the assumption that the employee while engaged in the same employment in the state of Michigan was not entitled to compensation.

"Such a construction of the law would place employees who are compelled to cross the state line in commerce in an unparalleled position. In businesses located in Ohio along the state border the employees are frequently required to deliver goods sold into adjoining states. Are these employees to be left without protection because they are engaged in interstate com-

merce? This query points emphatically to the peculiar necessity for local action until such time as Congress steps in."

As we view the matter, in the light of the principles thus discussed by the Supreme Court of Ohio, which we regard as both sound and controlling here, the claimant's husband was not "*so* engaged in interstate commerce as to be not subject to the legislative power" of the state of Wyoming as exercised through the Workmen's Compensation Act of this commonwealth.

Our conclusion accordingly is that the judgment of the district court of Goshen County should be affirmed, and an order to that effect will be entered.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.