William E. STEPHENSON, Appellant
(One of defendants below),

v.

Minnie A. MITCHELL, Wyoming State Treasurer, ex rel. WORKMEN'S COMPENSATION DEPARTMENT, Appellee (Plaintiff below).

No. 4555.

Supreme Court of Wyoming.

Sept. 8, 1977.

Ernest Wilkerson, New York City, on the brief, and John Burk, Casper, argued, for appellant.

V. Frank Mendicino, Atty. Gen., Cheyenne, on the brief, and Lawrence A. Bobbitt, III, Sp. Asst. Atty. Gen., argued for appellee.

John E. Stanfield, Smith, Stanfield & Scott, Laramie, for amicus curiae.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

The ultimate question involved in the appeal of this case is whether the industrial accident fund, administered by the Work-

men's Compensation Department, State of Wyoming, can be charged attorney's fees by an employee coming under the provisions of the Worker's Compensation Act making a successful recovery in a third-party action under the provisions of § 27–54, W.S.1957, C.1967, in effect at the time the issue arose. The district court held that the industrial accident fund was entitled to reimbursement for the total amount of all awards received by the injured workman under the act and attorney's fees were not deductible as an expense of recovery. Relief is sought in this court on the grounds that § 27–54 violates the Fifth, Thirteenth and Fourteenth Amendments to the United States Constitution, and Article I, § 6, and Article X, § 4, of the Wyoming Constitution. It is further urged that § 27–54 preserved the attorney's lien created by § 29–2, W.S.1957, and that § 27–54 unfairly required the injured employee to pay for the State's share of the costs of recovery. All questions were raised in the district court. We will affirm.

The facts were stipulated. Early in 1966, William E. Stephenson, defendant-appellant, was injured in a collision with an automobile owned by Reed Roller-Bit Company.[1] Defendant Stephenson was driving a pickup truck of his employer during the course of his employment and received workmen's compensation benefits in the amount of $2,011.11.

Defendant Stephenson obtained a settlement of $12,500.00 in consideration of dismissal of his damage suit against Reed Roller-Bit. Stephenson offered to reimburse the Workmen's Compensation Department the sums called for in § 27–54, less one-third of the benefits for defendant Wilkerson, his counsel, which Stephenson contended should be retained as a part of his cost of collecting the State's money. The Workmen's Compensation Department disagreed and ex rel. State of Wyoming, as plaintiff, sued for the entire amount. The district court earlier in the ensuing proceedings certified two constitutional questions to this court, but the case was remanded with the questions unanswered.[2]

When the matter came on again, both parties moved for summary judgment and the court entered judgment in favor of the plaintiff and against the defendants for the full sum of $2,011.11.[3] The judgment gives Stephenson no credit for attorney's fees he claims the State should help bear as its part of the cost of collection. The court further found that § 27–54, as amended by Session Laws of Wyoming, 1969, Chapter 191, repealed in 1975, and not its successor statute, § 27–313, W.S.1957, C.1967, 1975 Cum. Supp.,[4] governed distribution of the pro-

---

1. Reed Roller-Bit Company is not a party to this appeal. By stipulation, the complaint against that company was dismissed. It would appear that the amount involved in this case has in some fashion been set aside, pending the outcome.

2. *Griffith ex rel. Workmen's Compensation Department v. Stephenson,* Wyo.1972, 494 P.2d 546.

3. The sum of $2,011.11 represents the amount of benefits paid to Stephenson by the Workmen's Compensation Department, and for which the Department sought reimbursement because of a third-party settlement for damages in the sum of $12,500.00. Stephenson had claimed that the Department was entitled only to $1,340.74, which was the amount of compensation paid by the Department, less one-third of the costs of recovery, the attorney's fees claimed amounting to $640.37, the remainder being attributed to other costs of recovery.

4. Section 27–54 provides in pertinent part:

"Where an employee coming under the provisions of this act receives an injury under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee if engaged in extra-hazardous work for his employer at the time of the injury shall not be deprived of any compensation which he would otherwise receive under this act. He may also pursue his remedy at law against such third person, *except he shall not be entitled to a double recovery for those injuries for which he has been paid compensation under this act or under orders of the district court.* In the event that such employee recovers from such third person, in any manner, including judgment, compromise, settlement or release, the proceeds of said recovery for those injuries for which he has been paid compensation under this act shall be divided as follows:

"After deducting the reasonable cost of recovery or collection, which cost shall not exceed thirty-three and one-third percent

ceeds of the third-party settlement of $12,-500.00. It held that, under § 27–54, the plaintiff is not obligated to compensate the employee from the industrial accident fund for attorney's fees expended in pursuit of a third-party damage recovery, out of which the State must be reimbursed. The district court further held that § 27–54 was constitutional and not violative of the Fifth (due process), Thirteenth (involuntary servitude) or Fourteenth (due process) Amendments to the United States Constitution, or of Article I, § 6 (due process), and Article X, § 4, of the Wyoming Constitution.

■ With respect to the assertion that § 27–54 is unconstitutional, it is well settled that statutes are presumed to be constitutional unless affirmatively shown to be otherwise, and one who would deny the constitutionality of a statute has a heavy burden. The alleged unconstitutionality must be clearly and exactly shown beyond any reasonable doubt. *Budd v. Bishop,* Wyo.1975, 543 P.2d 368; *State v. Stern,* Wyo.1974, 526 P.2d 344; *Johnson v. Schrader,* Wyo.1973, 507 P.2d 814; Key Number 48(1), Constitutional Law, West's Wyoming Digest. The defendants fail on that score, particularly with respect to any federal violations and Article I, § 6, Wyoming Constitution. Per-

sons contesting the constitutionality of a statute must do more than make bald assertions of what they think constitutes a failure to accord due process or any other constitutional infraction. *Bell v. Gray,* Wyo. 1963, 377 P.2d 924, and cases there cited. Where an appellant makes only a perfunctory argument in support of a contention, this court need not consider it. *First National Bank of Thermopolis v. Bonham,* Wyo.1977, 559 P.2d 42. No authority at all is cited and it was acknowledged that no direct precedent related to workmen's compensation could be found. The principle theme of appellant's argument is that it is just not fair that the state industrial accident fund not share the expense of attorney's fees in the third-party recovery. In the concept of workmen's compensation, there are other views to the contrary, which we shall encompass in our discussion of the asserted transgression of the provisions of Article X, § 4, Wyoming Constitution, authorizing the creation of workmen's compensation for persons injured during the course of hazardous employment.

Article X, § 4, Wyoming Constitution provides:

"No law shall be enacted limiting the amount of damages to be recovered for

---

(33⅓%), one-third (⅓) of the remainder shall in any event be paid to the injured employee or his personal representative or other person entitled to being action. Out of the balance remaining, the industrial accident fund shall be reimbursed, if said balance be sufficient or to the extent of said balance if insufficient, for the total amount of all awards received by the injured employee under this act, including all moneys paid to him or in his behalf for doctor and hospital bills, and for any other purpose in his behalf. Any balance remaining shall be paid to the employee or his personal representative or other person entitled to bring action; and the total amount of such reimbursement shall be credited and apportioned to the respective fund or funds from which the said awards of compensation were withdrawn.

"In cases where an injured employee has received compensation under the provisions of this act, the State of Wyoming, through the workmen's compensation department ex rel the Wyoming state treasurer, shall have a right and interest in all actions for damages brought by any injured workman against a

person other than his employer and shall be served by registered or certified mail with a copy of the complaint filed in said suit. "In the event of any settlement, compromise or release entered into by the parties in such claims against a person other than the employer, the attorney general, representing the Wyoming state treasurer shall be made a party in all such negotiations for settlement, compromise or release, aforesaid. The proceeds of any such judgment, settlement, compromise or release shall be encumbered by a lien in favor of the workmen's compensation department ex rel the Wyoming state treasurer to the extent of the total amount of the state treasurer's claim for reimbursement to the industrial accident fund and the said lien shall remain in full force and effect until the proceeds aforesaid shall have been distributed to the parties entitled thereto in accordance with the provisions herein." (Emphasis added.)

Section 27–313, successor to § 27–54, provides specifically for the worker's retention of costs of collection.

causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death." [5]

Early in the life of the workmen's compensation laws passed pursuant to that constitutional authority, their provisions were attacked by employers as wrong, unfair, arbitrary, oppressive and a travesty on justice in that they required employers without fault to contribute to a fund to pay for injuries to their employees. In *Zancanelli v. Central Coal & Coke Co.*, 1918, 25 Wyo. 511, 173 P. 981, the general constitutionality of such laws was sustained and it was pointed out that the legislature was substituting one entirely new system for another that it deemed unwise and not meeting justly and equitably the circumstances of present-day employments, in providing certain and speedy relief without the difficulty, expense and delays of litigation.

It was claimed to be unfair that the careful employer must contribute to a fund and suffer for the acts of the negligent employer, and; that the right of the employee to be fully protected from the negligence of his employer was taken away. Upon this latter point, the court was pointing out what we see to be a divorce between the first sentence of Article X, § 4, protecting an individual from being limited in his recovery by reason of injury or death through the wrongful acts of another, and the right of the legislature for the public welfare to limit those recoveries in the interest of the greater number of employers and employees alike. As said by this court in *Zancanelli*, 53 Wyo. at 542, 173 P. at 989:

"* * * In adopting the new system both employes and employers gave up something that they each might gain something else, and it was in the nature of a compromise; * * *." [6]

5. This section was amended by a resolution adopted by the 1913 legislature, ratified by a vote of the people at the general election held November 3, 1914, and proclaimed in effect December 26, 1914. The amendment added all that part of the section which follows the second sentence, beginning with the words, "As to all extra hazardous employments * * *."

6. The court quoted with approval from *Stertz v. Industrial Insurance Commission of Washington*, 1916, 91 Wash. 588, 590, 158 P. 256, 258, Ann.Cas.1918B 354, 356:

"Our act came of a great compromise between employers and employed. Both had suffered under the old system; the employers by heavy judgments of which half was opposing lawyers' booty; the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in future, where in the past there had been no liability at all. The servant was willing, not only to give up trial by jury, but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it. All agreed that the blood of the workman was the cost of production; that the industry should bear the charge.

"By the working class the new legislation was craved [sic] from a horror of lawyers and judicial trials. What they wanted, as this act expressly recites in its first section, was compensation, not only safe, but sure. To win only after litigation, to collect only after the employment of lawyers, to receive the sum only after months or years of delay, was to the comparatively indigent claimant little better than to get nothing. The workmen wanted a system entirely new. It is but fair to admit that they had become impatient with the courts of law. They knew, and both economists and progressive jurists were pointing out, what is now generally conced-

■ As pointed out in *Zancanelli,* the matter of the schedule is one for the legislature, not the courts. It is a part of the schedule provided that if the workman recovers what he has immediately received when greatest in need from the real party at fault, then his benefits must be restored to the fund from whence they came. If the legislature wishes to enlarge his benefit by charging the fund for collection from the third-party person, then that is its business, not ours.

In *Brown v. State ex rel. Morgan,* 1959, 79 Wyo. 355, 334 P.2d 502, this court saw an element of unfairness when in its construction of an older version of § 27–54,[7] it discerned an inequity to the industrial accident fund, when under its terms, the more the worker got in his third-party recovery, the less was restored to the fund and observed, "Whether or not this results in inequities and is undesirable are matters within the province of the legislature." This court's basic holding in Brown was that the legislature is the one that has the power to attach conditions to the payments made under workmen's compensation statutes, even though a condition affects an amount recovered from a third party, and, of course, that right had its roots in Article X, § 4, Wyoming Constitution.

If we were to open up Pandora's box to a consideration of unfairness in the workmen's compensation act, we would hear arguments from every side—the employer, the employee and even the legislature. If we were to say that attorney's fees fall within the first sentence of Article X, § 4, we would be led to the identical farfetched conclusion that the rest of the legislatively-fixed schedule also unconstitutionally limits recovery under that provision.

■ As said in Larson, Workmen's Compensation Law, 1976, Third Party Actions, § 71.20, pp. 14–2 to 14–3:

"It is equally elementary that the claimant should not be allowed to keep the entire amount both of his compensation award and of his common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and to give the employee the excess. This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he would normally pay, which is correct, since to reduce his burden because of the relation between the employer and the employee would be a windfall to him which he has done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone." (Footnote omitted.)

We cannot legislate by changing the legislative schedule. We hold that § 27–54, in the form under consideration, is not in violation of Article X, § 4, Wyoming Constitution.

We have recently held that an attorney, under the general attorney's lien statute, § 29–2, W.S.1957, C.1967, cannot enforce his lien against those sums set aside by statute out of third-party damages which the legislature by § 27–54 has specifically mandated will be refunded to the state industrial accident fund. *Wyoming State Treasurer ex rel. Worker's Compensation Division v. McIntosh,* Wyo.1976, 557 P.2d 743, 746. We therefore need not again decide that point.

■ In passing, we want to say we very nearly dismissed this appeal for failure of the appellant to comply with Rule 12 of this court. Since we have been lax in the past in enforcing its provisions, we permitted this appeal to proceed. The appellant filed no acceptable brief in this court. The "brief" merely referred to briefs filed with the district court and appearing in the record but did not attach copies. The rule requires the filing of six copies of briefs; there is only one record. Each member of the court must have a copy. Additionally,

ed, that two generations ought never to have suffered from the baleful judgments of Abinger and Shaw."

7. Section 9, Chapter 143, Session Laws of Wyoming, 1951.

we expect to receive briefs prepared for the use of this court, not those prepared for the district court. The requirements very often vary. This is the last case in which that practice will be tolerated. In all future cases, the appeal will be summarily dismissed if an appellant's brief, such as the one received from the appellant here, is filed.

Affirmed.

ROSE, Justice, dissenting.

I am unable to concur with the majority, based on my understanding of the history of workmen's compensation in Wyoming and of fundamental notions of due process. I see an erosion of the foundational principles of workmen's compensation which is only exacerbated by this court's decision herein. I sincerely believe that § 27–54, W.S.1957, and its successor, § 27–313, W.S. 1957, C.1967, 1975 Cum.Supp., represent a travesty to the working men and women of this state—a travesty which has become less palatable by years of application. While harboring these convictions, I cannot and will not remain silent.

## THE CONSTITUTIONAL QUESTIONS PRESENTED

The first two sentences of Article 10, Section 4, of the Wyoming Constitution prohibit the enactment of any law which limits the amount of damages to be recovered for causing the injury or death of any person, and voids contracts which waive the rights of an employee to recover damages for injury or death. The remainder of Article 10, Section 4, is an exception to these provisions and was added as an amendment and approved in 1914, thereby paving the way

for a workmen's compensation statute enacted by the legislature in 1915. The amendment made no provision for the fund to receive contributions from or be reimbursed by monies recovered by the employee from negligent third persons, and, furthermore, did not contemplate that the fund would, under any circumstances, receive any manner of financial underwriting from the injured employee or the heirs of a deceased employee. Under the new industrial-accident-fund concept, the worker's contribution to the plan was *not* to take the form of financial fund-reimbursement but—as we will see—was to be expressed as the giving up of his common-law rights of action against the contributing employer. The act of 1915 contemplated that only the State's general fund and the employer would contribute to the fund—*not the employee* ! ! !

The purpose of the amendment, as expressed by Chapter 124, Session Laws of Wyoming 1915, was to authorize the establishment of an Industrial Accident Fund—financed by industry and underwritten by the State—from which employees injured while engaged in extra-hazardous employment would be paid compensation according to amounts predetermined by the legislature, that is, so much for a finger—so much for a hand—an arm—a leg—a life, etc.[1]

The worker's right to claim benefits and receive compensation from this fund is now (but has not always been) automatic; but it is now and always has been an exclusive remedy as between the employee and the contributing employer, with the employer receiving absolute immunity from any tort action · which might otherwise have been brought by the worker.[2] Payments from

---

**1.** In the course of this opinion, for the sake of convenience and brevity, I will refer only to the "injured employee," with acknowledgement that the benefits from the Industrial Accident Fund also inure to the heirs of a deceased employee in the event death occurs as a result of injury received while the employee was engaged in a covered employment and while acting within the scope of such employment.

**2.** Article 10, Section 4, supra; and *Markle v. Williamson*, Wyo., 518 P.2d 621.

Section 27–50, W.S.1957, C.1967, provided: "Payment of compensation generally; rights of action preempted.—Compensation herein provided for shall be payable to persons injured in extra-hazardous employments, as herein defined, or the dependent families of such, as die, as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Said compensation shall be payable

the fund cannot now be defeated except where the injury is occasioned by the sole "culpable" negligence of the claiming worker. This also has not always been true, as I will point out in this dissent.

According to § 27–54, supra, which was in effect when the appellant was injured, the legislature, in 1951, provided for the reimbursement of the contributing employer's account from personal-injury and death damages recovered from negligent third parties by the injured employee or his heirs. Since the workmen's-compensation exception to the original Article 10, Section 4, makes no provision for reimbursement to the employer's account in the Industrial Accident Fund from his employee's third-party recovery, the questions become these:

1. Is the requirement which causes the employee to reimburse the account of the employer a limitation ("limiting") upon

"the amount of damages to be recovered for causing the injury or death of any person."? (First sentence, Article 10, Section 4, Wyoming Constitution, supra.)

2. Is the reimbursement requirement a statutory contract

"with any employee waiving any right to recover damages for causing the death or injury of any employee . . . ."? (Second sentence, Article 10, Section 4, Wyoming Constitution, supra.)

3. Is the reimbursement requirement in excess of the police power of the State and, therefore, violative of the employee's Federal and State constitutional right to not be

from funds in the state treasury to be accumulated and maintained in the manner herein provided. The right of each employee to compensation from such funds shall be in lieu of and shall take the place of any and all rights of action against any employer contributing, as required by law to such fund in favor of any such person or persons by reason of any such injury or death. Sections 3–403 [1–1065], 3–404 [1–1066] and 57–427 [30–141], Wyoming Compiled Statutes, 1945, and all laws or parts of laws relating to damages for injuries or death from injuries or in anywise in conflict with this act are hereby repealed, as to the employments, employers and employees coming within the terms of this act. (Laws 1951, ch. 143, § 5)"

deprived of his property without due process of law?

If the answer to any one of the above is in the affirmative, then the provisions of § 27–54, supra, are unconstitutional.

When considering whether or not § 27–54 is a law "limiting the amount of damages to be recovered for causing the injury or death of any person," we must keep in mind that § 27–54 does these following things:

1. It delivers total control of, and a lien upon, the employee's third-party-recovery damages to the State and, in so doing,

2. It provides that the employee may deduct one-third of the third-party recovery to cover costs.

3. It provides that one-third of the remainder of the recovery will be paid to the injured employee or the heirs of a deceased worker.

4. It provides that out of the balance remaining, the contributing employer's accident-fund account shall be reimbursed—if the balance is sufficient to do that.

5. If the last-mentioned balance (4 above) is insufficient to wholly reimburse the fund account, then all of such balance will be applied to partially reimburse the fund.

6. If there are any monies remaining after complying with the above-enumerated fund-reimbursement provisions, then the remainder will go to the injured employee or the deceased employee's heirs.

Section 27.312(a), W.S.1957, C.1967, 1975 Cum.Supp., provides:

"Provisions exclusive; other remedies preempted; exception.—(a) The rights and remedies provided in this act [§§ 27–310 to 27–388] for an employee and his dependents for injuries incurred in extra hazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment unless the employees are grossly negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person."

In order to contemplate the question of whether the State has the power to take the property of the employee and use it to reimburse the employer's account in the Industrial Accident Fund, we must searchingly inquire into the nature, purpose and history of the act, together with this court's assessment of it. This is so because the State's authority to take the property of the injured workman (i. e., his damage monies) must come from its police power under conditions where the power is unrestricted either by Article 10, Section 4, of the Wyoming Constitution or the due-process clauses of the Federal or State Constitutions, and in circumstances whereby the State's police power is unimpeded by any other constitutional restraints. *State v. Langley*, 53 Wyo. 332, 84 P.2d 767, 770.

## BACKGROUND

Because of the prohibition expressed by Article 10, Section 4, of the Wyoming Constitution, it was determined in the early part of the century that "workmen's compensation" legislation could not be enacted without amendment. We said in *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981, both workers and the employers wanted and desperately needed such a law.[3] Prior to amendment, Article 10, Section 4, simply provided:

"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employe waiving any right to recover damages for causing the death or injury of any employe shall be void."

The first "workmen's compensation law" was passed by the Wyoming Legislature in 1915 and appears in the session laws of that year as Chapter 124. It contained no provisions for reimbursement to the Industrial Accident Fund from third-party recovery. This would be so because the worker's right to payment from the fund was exclusive of all common-law rights of action against the employer. The worker, on the other hand, could not recover from the fund in those circumstances where there was no fault on the part of the employer and some person other than the employer was liable for the worker's injury or death.[4] It was mandatory in such cases (where the third party was at fault and the employer was not), that the employee seek his remedy against third persons *to the exclusion of any right he might have otherwise had to claim against the fund.* According to this condition of the statute, it became common practice for employers to protect their Industrial-Accident-Fund accounts by alleging that the injury was caused by another under circumstances where there was no fault on the part of the employer—thus defeating the employee's claim and leaving him to make his way in the uncertain world of third-party tort.

Therefore, with all its good intentions, the original act continued to embrace the law of tort as a part of its warp and woof

**3.** In *Zancanelli*, supra, while contemplating the desires of both labor and management for a workmen's compensation law, we relied upon *Stertz v. Industrial Insurance Commission*, 91 Wash. 588, 590, 158 P. 256, 258, to express our thoughts. The Washington court in *Stertz* said:

"Our act came of a great compromise between employers and employed. Both had suffered under the old system; the employers by heavy judgments of which half was opposing lawyers' booty, the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in future, where in the past there had been no liability at all. The servant was willing, not only to give up trial by jury, but to accept far less than he had

often won in court; provided he was sure to get the small sum without having to fight for it. *All agreed that the blood of the workman was the cost of production, that the industry should bear the charge. . . .*" · [Emphasis supplied]

**4.** Section 8 of Chapter 124, S.L.1915, provided:
"If Other Than Employer Is Liable.
"Sec. 8. Where an employee coming under the provisions of this Act received an injury under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, and no legal liability attaching to the employer, then and in such case such employee shall be left to his remedy at law against such other person, and compensation shall not be payable under this Act."

and the worker's right to fund benefits remained heavily burdened by the fault concept. It is obvious then that there was no necessity for a third-party reimbursement requirement in those fact situations where fund benefits were not available to the worker when third persons were allegedly liable and the employer blameless. This mix of tort and contract law in the workmen's compensation act was—as we shall see—to come to cause an almost insurmountable problem.

Within the context of the reasoning which impels this dissent, however, I observe with emphasis that under the original act *there was also no provision for injured employee fund-reimbursement where third parties and the employer were both at fault and damages had been recovered from the negligent third party.* In these circumstances, the employer's fund account *and* third-party common-law rights of action were both available to the injured employee. In the event recovery was had from both the fund *and* the negligent third person, the employee was under no obligation to reimburse the fund.

The only provisions for accident fund financing to be found in Chapter 124, supra, directed the legislature to make an initial thirty-thousand-dollar payment, together with a sum to be appropriated annually which was calculated as being an amount equal to the employers' contributions, but not, in any case, to exceed $40,000. In addition, Section 16 of Chapter 124 (earliest predecessor of § 27–54), provided the employer would contribute to the fund according to the formula there established. It was clearly the intention of the legislature, in authorizing the submission of the amendment to Article 10, Section 4, as that intention is expressed through Section 16, Chapter 124, S.L.1915, that the employer (aided by legislative underwriting) was to finance the fund, in return for immunity from suit. That was the trade-off—there was no statutory provision for and no inference of legislative intent to indicate that the fund was to be contributed to or reimbursed by the employee under *any* set of circumstances.

Section 32 of Chapter 124 provided:

"Payments of Employers Not To Be Refunded.

"Sec. 32. All payments made into the Accident Fund by any and every employer under the provisions of this act shall be taken as paid and received in *consideration of the indemnity to such employer by reason of his contributing to the Industrial Accident Fund* and in consideration of the payments made by the State to such fund, and no part of any moneys so paid in by any employer shall ever be refunded to him either during the time when he continues in business as such employer, or after he ceases such business. . . ."
[Emphasis supplied]

*Zancanelli*, supra, analogized the employer's obligation to contribute to the Industrial Accident Fund to the corollary duty of an employer to contribute to an industrial insurance plan in exchange for immunity from tort action and the employee's limited right to claim industrial injury-benefits from the insurer. We approved, in *Zancanelli*, the opinion in *Jensen v. Southern Pacific Co.*, 215 N.Y. 514, 109 N.E. 600, L.R.A. 1916A, 403 Ann.Cas. 1916B, where the New York court said:

" 'This act protects both employer and employé; the former from wasteful suits and extravagant verdicts; the latter from the expense, uncertainties, and delays of litigation in all cases and from the certainty of defeat if unable to establish a case of actionable negligence. Both acts are said to have been based on the proposition *that the risk of accidental injuries in a hazardous employment should be borne by the business, and that loss should not fall on the injured employé and his dependents, who are unable to bear it or to protect themselves against it.* * * * This act does in fact, as well as in theory, distribute the burden equitably over the industries affected. It allows compensation only for loss of earning power, but by the creation of a state insurance fund. * * * It insures the prompt receipt by the injured employé or his dependents of a certain sum undimin-

ished by the expense of litigation. * * A compulsory scheme of insurance to secure injured workmen in hazardous employments and their dependents from becoming objects of charity certainly promotes the public welfare as directly as does an insurance of bank depositors from loss. * * * *To be sure, the compensation or recovery is limited, and that in a sense may possibly constitute a taking; but, if so, it is his contribution to an insurance scheme designed for his benefit, and may be justified on precisely the same grounds as the contribution exacted of the employer has been. . . .'"* [Emphasis supplied] Ibid., 173 P., pp. 989–990.

We recognized the workmen's compensation law to be in the nature of an industrial-insurance act when we said:

". . . It is not intended to give compensation in the nature of damages, but is more in the nature of accident insurance. . . ." [5]

In the same opinion we identified our law with the State of Washington's compensation act, where the highest court of that state, in *Stertz v. Indus. Comm.*, 91 Wash. 588, 158 P. 256, described its law to have created a statutory industrial insurance-funding-plan. We quoted *Stertz*, supra, in an effort to describe our concept of our own industrial-accident law and adopted the following language from the Washington court's opinion:

"'. . . [o]urs is not an employer's liability act. It is not even an ordinary compensation act. *It is an industrial insurance statute.* * * * All the features of an insurance act are present. Not only are all remedies between master

and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employé is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund fed by various employers. When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended. . . .'" [Emphasis supplied] 173 P., at 989.

In short, we considered, in *Zancanelli*, that the financial burden attendant upon the insurance plan would be borne by industry in return for limited-fund-benefit payments and the worker's agreement that the employer should be forever free of tort claims.

Our expressions relative to the nature of our worker's compensation law have been consistent from *Zancanelli* to *Markle v. Williamson*, Wyo., 518 P.2d 621.[6]

A near impasse presented itself, however, when the Article 10, Section 4, amendment language was pitted against Section 8 of Chapter 124, S.L.1915.

The Article 10, Section 4, amendment language speaks of the creation of a fund out of which the injured worker will be paid, except where his injury comes about through his own sole "culpable negligence." The provision is:

". . . As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families

---

**5.** See also *Hotelling v. Fargo-Western Oil Co.*, 33 Wyo. 240, 238 P. 542; *In re Byrne*, 53 Wyo. 519, 86 P.2d 1095, 1101; *Fuhs v. Swenson*, 58 Wyo. 293, 131 P.2d 333, 337.

**6.** We said in *Markle v. Williamson*, supra:
   ". . . [T]he Wyoming Supreme Court has more than once held that the Wyoming Compensation Act is in the nature of accident insurance and is not intended to give compensation as damages. . . ." (*Citing Hotelling v. Fargo-Western Oil Co.*, 33

Wyo. 240, 238 P. 542; *In re Byrne*, 53 Wyo. 519, 86 P.2d 1095, 1101; and *Fuhs v. Swenson*, 58 Wyo. 293, 131 P.2d 333, 337.)
The *Markle* opinion continued in this vein:
   "To say that workmen's compensation in Wyoming is in the nature of insurance is to say it stems from contract. Indeed, the clear implication in *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981, 989, is that our Workmen's Compensation Act is in contract and not in tort. . . ."

of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death."

On the other hand, the statute purporting to carry out the intent and purpose of the constitutional amendment authorized the payment of claims, except where the worker's negligence was sole and culpable—provided—the fund would also *not* be responsible for benefit payments where, according to Section 8 of Chapter 124,

".  .  . an employee coming under the provisions of this Act received an injury under *circumstances creating a legal liability in some person other than the employer* to pay damages in respect thereof, *and no legal liability attaching to the employer*, then and in such case such employee shall be left to his remedy at law against such other person, and compensation shall not be payable under this Act." [Emphasis supplied]

The holding in *Zancanelli* to the effect that ours was an industrial-insurance act funded by employer contribution and conceived in contract and not in tort was, therefore, not easily applied when tested against the provisions of Section 8, Chapter 124, S.L.1915, *supra*. This was so because, while *Zancanelli* interpreted the act as creating a statutory industrial-insurance contract, the language of the act (Section 8) authorized the employer to respond to the employee's fund claims in tort. Being thus couched in tort, the act, as interpreted by our holding in *Zancanelli* created a conflict in legal philosophy that was difficult to resolve.

In short the great question became this: What kind of a statutorily-imposed liability insurance policy did the employee-insured own which would permit the defeat of his claim by the employer-insurer upon proof that a third party was negligent in circumstances where the employer was not?

In *Hotelling v. Fargo-Western Oil Co.*, 33 Wyo. 240, 238 P. 542, the employer contested two death claims against the fund on the grounds that, first off, there was sole culpable negligence on the part of each of the decedents.[7] Secondly, the employer urged rejection of the death claims because the heirs of each had a cause of action for wrongful death against the estate of the other employee and, under the facts, the employer was not negligent. Therefore, contended the employer, according to § 8 of Chapter 124, the claims should not be paid.

Notwithstanding the provisions of § 8, Chapter 124, *supra*, this court repudiated the employer's negligence-defense, holding, first of all, the facts did not support the sole culpable negligence contention. More importantly, we held that the State and the employer could not avoid payment of the claim through the device of asserting the employer to be free of fault in fact situations where the representatives of the deceased persons had rights of action for wrongful death against the estates of the several decedents.

In *In re Byrne*, 53 Wyo. 519, 86 P.2d 1095, the covered employee, while engaged in changing a tire on his vehicle parked well off the main traveled area of the roadway, was struck and killed by a drunken driver. Notwithstanding the clear language of § 8 of Chapter 124, *supra*, we again held that the employer could not avoid payment from the fund even though the heirs had a right of action against a negligent third party and no liability attached to the employer.

Therefore, even though the legislature had left the doctrine of tort in the act, we

---

[7] The 1915 act provided, even as the present law does, that the workman will be denied fund benefits if he is guilty of culpable negligence (Ch. 124, § 2, S.L.1915), even though there is no corollary penalty which strips the employer of his immunity when he or his servants are guilty of culpable or gross neglect or of willful and wanton misconduct resulting in injury or death.

found it imperative to judicially reject the tort defense in *Hotelling* and *In re Byrne* because of the industrial-accident-insurance-fund interpretation given the workmen's compensation law in our opinion in *Zancanelli.* To have acknowledged the tort defenses being asserted by the employers to protect their accounts in the Industrial Accident Fund would have been to destroy the industrial-accident-insurance concept expressed by the legislative enactment of the Workmen's Compensation Law of 1915, as interpreted in *Zancanelli.*

In holding as we did, we admitted in *In re Byrne, supra,* that the contention of the employer as he relied upon § 8 was frightening and formidable when we said:

> "We are obliged to say that if this section (§ 8, Chapter 124, S.L.1915) be taken as operative in its exact literal sense, then the Workmen's Compensation Act of this State as an entirety must be regarded as seriously affected and *its primary purpose to supply an accident insurance system,* as heretofore pointed out by this court over twenty years ago in *Zancanelli v. Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981, in substitution for common law obligations ordinarily existing between employer and employee will be in large measure wrecked. . . ." [Parenthetical matter and emphasis supplied]

Founded upon the in-depth review of the *Zancanelli* opinion, in which we held the act to be an industrial-insurance law, we were able to conclude in *In re Byrne, supra:*

> "We are obliged to reach the conclusion that Section 124–109 (§ 8, Chapter 124, Session Laws 1915) must be deemed wholly irreconcilable with the general spirit and true intention of the Legislature as disclosed by the Workmen's Compensation Act when viewed in the light of the prior utterances of this court, and hence must be held to be without operative force under circumstances such as are now at bar." [Parenthetical matter supplied]

With the opinions above discussed, we firmly established in our law these following propositions:

1. The Worker's Compensation Act is in the nature of industrial-accident-insurance.

2. The funding will be borne by the employer and underwritten by the legislature.

3. Contributing employers have no tort liability to injured, or the heirs of deceased, workers.

4. Employers could no longer avoid industrial-accident-fund claim-payments by asserting the presence of fault on the part of third parties and their own freedom from fault, even though the statute provided otherwise.

5. Except where they were shown to be culpably negligent, workers could now successfully claim against the Industrial Accident Fund without respect to their own fault or the fault of others.

6. The common-law rights of action were left undisturbed, excepting only that the worker had no right of action against the contributing employer for the employer's negligence resulting in injury or death.

## THE 1951 REIMBURSEMENT AMENDMENT

The legislative confrontation created by § 8 of Chapter 124, S.L.1915, and the decisions in *Hotelling* and *In re Byrne* had the effect of bringing about an interpretation of the statute which held that tort defenses would no longer defeat the worker's claim even though such defenses were expressly authorized by the statute. This legislative-judicial incompatibility festered so long and became so untenable that in 1951 the legislature amended the act in an apparent effort to more comfortably comport the statutory law with the decisions of this court. Section 8 of Chapter 124, *supra,* was repealed and § 9 of Chapter 143, S.L.1951, was substituted. Section 9, *supra,* contained the first enactment of the third-party refund concept and was carried into § 27–54, W.S.1957—the statute in force when appellant was injured.

The changes brought on in 1951 by § 9 of Chapter 143 were these:

1. Where before (under § 8, Chapter 124, S.L.1915) the employer could defeat a worker's claim by asserting a third party's negligence—where there was no negligence in the employer—he could no longer urge such a defense to defeat the injured employee's claimed fund benefits. This had the effect of conforming the statute to the holdings in *Zancanelli, Hotelling,* and *In re Byrne, supra.*

2. Where before there was no refund provision relative to third-party recovery—*even where a third party and the employer were negligent and the employee recovered from the fund and the third party*—the new law provided for payment to the fund of part of every third-party recovery where the employee had also drawn accident-fund benefits.

3. The 1915 law was silent with respect to the employee's common-law right of third-party recovery. In 1951 the legislature expressed affirmative acknowledgement of the employee's right to third-party recovery, even though fund benefits had been paid.

*All* of the problems were not solved by the 1951 enactment, however, and, as indicated by this appeal, new ones were spawned. While providing that third-party suits would not preclude claims against the fund, the 1951 amendment went on to provide that the employee

".    .    . may also pursue his remedy at law against such third person, provided that he *shall not be entitled to a double recovery,* and in the event that such employee recovers from such person, he shall be entitled to retain only the excess over any compensation paid to him, and must reimburse the Industrial Accident Fund for all moneys advanced to him for such injury,    .    .    ." [Emphasis supplied]

The statute then spells out a formula according to which third-party recovery monies will be deposited in the Industrial Accident Fund as a refund for compensation benefits paid.

The legislature of 1951 granted no rights to the employee that had not previously been his under the constitution and the common law. Specifically, the proclaimed statutory right to bring suit against third persons was totally gratuitous and superfluous. The amendment to the constitution (Article 10, Section 4) only authorized the legislature to enact legislation giving the employee the right to participate in the fund in return for the forfeiture of his rights of action against his contributing employer. His common-law right to sue third persons was not in any way inhibited either by the Wyoming Constitution—the 1915 law—or any amendment prior to and including the act of 1951. I make this observation for the purpose of calling attention to the fact that the employee gained nothing when the legislature proclaimed—in 1951—that the injured employee who had claimed and received Industrial Accident Fund benefits could also pursue his remedies against any person other than the employer. This had always been his right. It was never any different! !

We said in *Markle v. Williamson,* Wyo., 518 P.2d 621, 625, in considering whether immunity granted a contributing employer inured to the benefit of a co-employee of the injured worker:

".    .    . The amendment [to Article 10, Section 4, Wyoming Constitution] being in 1914 when industrial suits were quite infrequent, it would appear the situation with respect to co-workers was not dealt with. *The result is that common-law rights (such as the right of a worker to sue a fellow employee) remained unchanged; and that right continues to this time.*" [Bracketed matter and emphasis supplied]

The history and background described heretofore is long—but it is necessarily long because it is only against this backdrop of the legislative and judicial treatment of the Worker's Compensation Act that the constitutional issue can be formulated and clearly viewed.

## THE CONSTITUTIONAL QUESTION RESOLVED

The appellee-Worker's Compensation Division argues that § 27–54, *supra,* was legit-

imately enacted under the State's general police power. Against the police power of the State—strong as it is—there are set various boundaries within which the State may exercise its power and outside of which it may not trespass.

The police power of the State has its limitations in the due-process clauses of the State and Federal Constitutions. The late Justice Blume said in his learned opinion in *State v. Langley*, 53 Wyo. 332, 334, 84 P.2d 767, 770:

"... So, in *Commonwealth v. Alger*, 7 Cush., Mass., 53, decided in 1853, and in *Thorpe v. Rutland R. R. Co.*, 27 Vt. 140, 62 Am.Dec. 625, decided in 1855, it was held that the police power is not unlimited. That rule came soon to be fixed more definitely, and in *Wynehamer v. People*, 1856, 13 N.Y. 378 the court decided that the police power is definitely limited by the constitutional provision for due process, and that that provision has, accordingly, a substantive aspect as well as a procedural one. See Mott, Due Process of Law, 313–317. That is the view which has been maintained by the courts ever since that time, and so we find it stated as a general rule that it has reference also to the enactments of the legislature. 12 C.J. 1190."

The police power also has its limitation in Article 1, Section 7, of our Constitution, which provides that:

"Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

Where the courts must referee a contest in which due-process rights of the individual are in apposition with the police power of the state, the standard against which the ultimate decision must be tested is that of reasonableness, and what is reasonable depends upon the facts and circumstances. *State v. Langley, supra.*

We said in *Langley, supra*, at 53 Wyo. 334, 84 P.2d 771:

"In order that a statute may be valid, the purpose, aim, or end thereof must be within the scope or purview of the police power, and in furtherance thereof; . . . 12 C.J. 929, 930; *State v. Buck Mercantile Co.*, 38 Wyo. 47, 264 P. 1023, 57 A.L.R. 675 . . . .."

Interpolated and applied to the matter at hand, this rule says that the purpose, aim, and end of § 27–54, *supra*, which takes a part of the injured worker's third-party recovery and deposits it into the Industrial Accident Fund, must be such a law as the state has a right to enact. In other words, for the statute to pass the test of validity, the enactment may not be one which unlawfully invades the worker's due-process guarantees.

It is said in 16 C.J.S. Constitutional Law § 70, p. 189:

". . . [I]t has frequently been held or recognized that a state constitution is not a grant or delegation of power, but is a limitation or restriction of power. . . ."

This is the rule adopted by the decisions of this court. In *State v. Snyder, Treasurer*, 29 Wyo. 199, 222–223, 212 P. 771, 779, we referred with approval to the court's opinion in *Wheeler v. Weightman*, 96 Kan. 50, 149 P. 977, L.R.A. 1916A, 846, where the Kansas court said:

"' . . . The state governments possess all governmental power not denied to them by the Constitution, and in the absence of a prohibition expressed or necessarily implied they may take all reasonable measures for the promotion of the general welfare. . . .'"

We went on to say in *Snyder*:

"The Legislature in this state possesses all legislative authority except as restricted by the state or federal Constitution, either expressly or by clear implication. *Achenbach v. Kincaid*, 25 Idaho, 768, 140 P. 529; *Williams v. Evans*, 139 Minn. 32, 165 N.W. 495, 166 N.W. 504, L.R.A. 1918F, 542. . . ."[8]

---

8. To the same effect, see *State v. Johnson County High School*, 43 Wyo. 494, 5 P.2d 255; *Harkin v. Board of Commissioners*, 30 Wyo. 455, 222 P. 35; and *State ex rel. Budge v. Snyder*, 31 Wyo. 333, 225 P. 1102.

Applied to the instant case, this means that § 27–54, *supra*, may not have the effect of limiting recovery for injury or death unless we are able to find where the 1914 amendment to Article 10, Section 4, makes an exception to the original and existing prohibitions against the enactment of such legislation. If such an exception is not to be found, the legislature lacks power to enact a law allowing the State to participate in third-party recovery which is violative of the specific prohibitory provisions of the first two sentences of Article 10, Section 4, *supra*.

*The Statute (§ 27–54) Violates the Restrictions of Article 10, Section 4*

The Wyoming Constitution, in Article 10, Section 4, expressly places definite and recognizable restrictions on legislative authority in the workmen's compensation field. It may be urged that the first sentence of Article 10, Section 4, was originally intended to prevent a dollar maximum from being attached to wrongful-death recoveries (*Danielson v. Donmopray*, 57 F.2d 565 (D.C., D.Wyo.1932)), but the second sentence of the original Article 10, Section 4, specifically voids any contract with an employee which would waive any right to recover damages.[9] It is the combination of these two provisions which spells the death knell for the reimbursement provisions contained in § 27–54, *supra*.

Section 27–54, *supra*, not only does not take away the employee's common-law right to sue a third party, but expressly reaffirms it. The section, however, from the very inception of the litigation process, gives the State a right and interest in—not only all actions for damages brought against a person other than an employer—but in the proceeds as well. Furthermore, according to the statute, the State must be made a party to all negotiations for settlement, compromise or release and is granted a lien on the proceeds of any judgment or settlement. Therefore, although the right to sue and recover damages from persons other than the employer remains intact, firm, identifiable restrictions and limitations are imposed—not only on the right to sue but upon the funds recovered. The source of the State's power to enact such restrictions presumably rests in the amendment to Article 10, Section 4, providing for the workmen's compensation system. Yet, this constitutional provision is silent as to third-party suits, and for good reason.

As adopted, Article 10, Section 4, speaks only of the relative rights of employers and employees. The trade-off of rights and liabilities, resulting in the workmen's compensation law, was exhaustively discussed by this court in *Zancanelli, supra*. Nowhere in this discussion was any trade-off between employer and employees, as affected by third-party liability, mentioned. In fact, in *In re Byrne, supra*, this court expressly repudiated the employer's tactic of asserting his rights under the then extant statute giving him the authority to avoid claims by asserting third-party negligence. Our reasoning was that such avoidance was inconsistent with the act which we had held in *Zancanelli* to be contractual in nature rather than one which was conceived in the philosophy of tort. Only the employee's sole culpable negligence can now defeat a compensation claim.

While the reimbursement provision does not serve to directly defeat a compensation claim, it indirectly achieves the same result. Theoretically, if an injured employee recovers from a third party, the employer is placed back in his original position in that the reimbursement is credited to the account from which compensation was originally paid. § 27–54, *supra*. This means that an employee is contributing to the account of the employer in the fund-financing process—a duty which was not contemplated by the constitutional amendment of 1914 or the legislature in passing the act of 1915. As a result, the employee, when he undertakes his negligence action, does—at

9. To the same effect, see Article 19, Section 7, Wyoming Constitution; and Section 27–312(b), W.S.1957, C.1967, 1975 Cum.Supp.

the same time—through operation of law, enter into an implied contract to waive his right to part of the proceeds from a third-party recovery. This waiver is a condition precedent to the receipt of workmen's compensation funds. § 27–54, *supra.* As such, it adds an essential term to the original agreement between employers and employees, and is contradictory to the foundational concepts of workmen's compensation being a form of industrial-accident insurance. *Zancanelli, supra.*

My research has not brought to my attention any industrial-accident-liability concept which contemplates reimbursement to the insurer for claims paid the injured, except through the doctrine of subrogation, and ours is clearly not a subrogation statute. The statutory reimbursement provisions being discussed herein are akin to commercial insurance contract subrogation clauses, although § 27–54, *supra,* is not a subrogation statute like those of many other states. The difference, however, rests in the fact that such clauses are included in the original contract bargained for by the insured and the insurer when the various compensation statutes are enacted, whereas the Wyoming reimbursement statute was added to the industrial insurance scheme as an afterthought. It is, therefore, like an after-the-fact rider to an insurance policy which has been imposed upon, but not consented to, by the insured. In the workmen's compensation situation, the employee already has a vested right to compensation benefits, if he otherwise qualifies, and he cannot be forced to condition that right on a waiver of other rights in a damage recovery. This is the clear import of the original wording of Article 10, Section 4. The employer is the party benefiting from reimbursement, not the employee. In this vein, it is to be recalled that we rejected the employer's statutory right to defeat the worker's fund claims by asserting third-party negligence in *In re Byrne, supra.* He should no longer be allowed to do indirectly that which he has been prohibited from doing directly.

While I agree with the majority's observation that the schedule of benefits due and owing to an injured employee is a matter

for the legislature, I cannot agree when it stated that:

> ". . . It is part of the schedule provided that if the workman recovers what he has immediately received when greatest in need from the real party at fault, then his benefits must be restored to the fund from whence they came. . . ."

The concept of reimbursement goes much further into the roots of workmen's compensation than the mere schedule of benefits. While the superficial effect of reimbursement is purely monetary, its underlying effect is to weaken the foundations of workmen's compensation by indirectly allowing fault concepts to shift the burden of loss from the employer to a third party. Employers agreed to finance this system of industrial insurance without an expectation that somehow the employee would assist in this burden. That bargain is now broken under the guise of reimbursement.

I would have found, therefore, that the requirement to reimburse the fund out of a third-party recovery is a limitation upon recovery for causing death or injury, and as such is prohibited by Article 10, Section 4, of the Constitution of Wyoming. It follows from this conclusion that the requirements of § 27–54, *supra,* which provide for Industrial Accident Fund reimbursement from the injured employee's third-party recovery are the result of an invalid exercise of the State's police power in that they are repugnant to the worker's constitutional rights of due process of law.

*The Statute Also Violates the Restrictions of Article 1, Section 6*

Not only would I have found that § 27–54, *supra,* violates Article 10, Section 4, of the Wyoming Constitution—I would go further and also find that this reimbursement provision violates Article 1, Section 6, of our Constitution, which states that

> "[n]o person shall be deprived of life, liberty or property without due process of law."

In *Bulova Watch Co. v. Zale Jewelry Co. of Cheyenne,* Wyo., 371 P.2d 409, 417, we

summarized the pronouncements of *State v. Langley, supra*, as follows:

".  .  . That police power is an attribute of sovereignty inherent in the State's legislative body unless expressly limited by Constitution; that the due process clause of our Constitution has a substantive aspect which definitely limits police power; that a law will not be declared unconstitutional unless clearly so; that even though police power is an attribute of sovereignty essential to civilized government and inherent in the legislative body, the means adopted for its exercise must be reasonable and designed to accomplish the end in view; that the purposes for which the police power is invoked must have relation to the public weal, must be within the scope and in furtherance of that power, and the means adopted must be reasonable and appropriate for the accomplishment of and have a substantial connection with the end in view; .  .  . that courts, employing a standard of reasonableness as applied to the facts, are the final arbiters as to whether the law is an unwarranted invasion of rights guaranteed by the Constitution; .  .  ."

I do not question the belief that § 27–54, *supra*, was enacted for a purpose related to the public welfare. We all have an interest in the maintenance of a viable workmen's compensation fund from which injured workers can receive needed financial assistance. The question remains, however, whether the means adopted by the legislature to achieve this end are reasonable and appropriate. The history of the Worker's Compensation Act, set forth herein, clearly indicates that it was the employer who was to provide for the viability of workmen's compensation funds. This was the consideration received by employees in exchange for their agreement not to exercise their common-law right to sue employers. This was the consideration given by employers in exchange for immunity from such suits.

We have steadfastly maintained that an employer cannot avoid payment from the fund by asserting the negligence of a third party. *Hotelling v. Fargo-Western Oil Co.,*

*supra*; and *In re Byrne, supra*. This attempted shift in the burden of liability was held to be at odds with the fundamental insurance concepts of worker's compensation. In addition, although the question has not yet been decided by this court, it can be contended that an employer may not directly seek contribution from an allegedly-negligent third party in the absence of statutory subrogation provisions. 101 C.J.S. Workmen's Compensation § 992c, at 509. Wyoming does not have such a subrogation statute. If an employer's liability is fixed by statute—without reference to fault—and such an employer may not seek contribution from a third party, it seems manifestly unfair to allow him to reap the benefits of an injured employee's third-party action. To allow such a situation, is to allow the legislature, and once again the employer, to shift the burden of providing a viable worker's compensation fund. Reimbursement—taken in this context—is no more than another means by which an employer can escape liability because of the existence of a negligent third party. The situation is rendered even more unfair when it is realized that an employer, who may have been at least partially negligent in the tort sense, may totally escape liability if an injured employee recovers from a jointly-negligent third party. The observation follows from the possibility that a negligent third party may not be able to receive contribution from a contributing employer. See, Comment, Wyoming Contribution Among Joint Tortfeasors, 9 Land and Water L.Rev. 589, 603–605 (1974). This is another question yet to be decided by this court. It is clear to me, however, that the existence of § 27–54, *supra*, allows a contributing employer to use the worker's compensation provisions not only as a shield, but as a sword to shift the proper responsibility of providing funds with which to make the system work. It was never contemplated that the employee was to share in this burden.

The language of § 27–54, *supra*, when it states that an injured employee shall not be entitled to a double recovery for those injuries for which he has been compensated, itself attempts to provide justification for the reimbursement provisions. Such a jus-

tification, however, rests on a false premise and is, therefore, no justification at all.

The statutory contractual award of compensation under the Wyoming Worker's Compensation Act, *supra*, is not truly a "recovery" as that term is employed in the tort context. The obligations being satisfied rest on entirely different foundations. The fund benefits are received out of a contractual obligation issuing from an agreement between the contributing employer and the worker, as imposed by the legislature. Third-party recovery represents payment from those who are in no way related to the employer-employee relationship and which damages have become due and owing by reason of wrong-doing, negligence and fault against the worker under circumstances where the employer may have been in no manner involved. As a result, no true "double recovery" occurs when an injured worker is allowed to keep compensation paid under the Act *and* the full amount of a third-party damage recovery. *Jones v. Appalachian Electric Power Co.*, 145 W.Va. 478, 115 S.E.2d 129. The Supreme Court of Appeals of West Virginia, in *Jones,* held that there is no double "recovery" if an administrator is allowed to retain a wrongful-death recovery without a remittitur of compensation received from the Workmen's Compensation Fund. The decision is significant in that West Virginia is one of three jurisdictions which do *not* have a reimbursement provision as is present in the Wyoming Statutes.

In Georgia, prior to enactment of its reimbursement statute [10], an injured employee could keep compensation paid and third-party damages recovered. *Atlantic Ice and Coal Corp. v. Wishard,* (1923) 30 Ga.App. 730, 119 S.E. 429. This statute was repealed in 1972, even though it had been found to comport with procedural due process. *Southern Railway Co. v. Overnite Transportation Co.,* 223 Ga. 825, 158 S.E.2d 387.[11]

10. Ga.Code Ann., § 114–403.

11. Ohio is the third state without a reimbursement or subrogation statute, but it does have a provision which prohibits comment as to compensation paid, in the course of third-party

My position therefore, rather than encouraging "double recoveries" by injured employees, serves merely to strictly apply the industrial-accident-insurance concepts previously announced by this court, thereby assuring to such injured workers the full extent of their common-law rights against persons other than contributing employers. It is to be remembered that this was the original purpose for worker's compensation—a purpose which has been eroded over the years. Such erosion can no longer be tolerated.

In summary, I do not think it can be seriously contended that an injured employee's property is not taken by reason of § 27–54, *supra*. My quarrel is not with the taking itself, but rather with the means by which it is accomplished. Those means—as they are set in § 27–54, *supra*—are both unreasonable and inappropriate mechanisms for the achievement of the purported purpose of maintaining a viable worker's compensation fund. As a result, I would have found that § 27–54, *supra*, violates the due-process clause of our Constitution.

litigation. Ohio Rev. Code Ann. § 4123.91 (Baldwin). It also has a constitutional provision which prohibits any law which limits a damage recovery in wrongful death actions. Article 1, Section 19a, Ohio Constitution.